Karen S. Spicker, SBN 127934
Michael G. Doan, SBN 175649
Doan Law Firm
1930 S. Coast Hwy., Suite 206
Oceanside, CA 92054
Phone (760) 450-3333 • Fax (760) 720-6082
karen@doanlaw.com

Attorney for PLAINTIFF
CLAIRE CHERISE BRONTE

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

CLAIRE CHERISE BRONTE,

Plaintiffs,

vs.

LENSCRAFTER; GENERAL ELECTRIC CAPITAL RETAIL BANK; SYNCHRONY BANK; AND DOES 1 through 10, inclusive;

Defendants.

Case No.: **'16CV2728 WQHJMA**

**PLAINTIFF'S COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF:**

1. Negligent Violation of Telephone Consumer Protection Act, 47 U.S.C. §227 et. seq.

2. Willful and/or Knowing Violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 et. seq.

3. Violation of the Bankruptcy Automatic Stay, 11 U.S.C. §362(a)(6)

[Jury Trial Demanded]

*BRONTE V. LENSCRAFTERS et. al.*

# I.
# INTRODUCTION

1. Plaintiff CLAIRE CHERISE BRONTE (hereinafter "BRONTE" and/or "PLAINTIFF") brings this lawsuit against the DEFENDANTS, LENSCRAFTERS ("LENSCRAFTER"), GENERAL ELECTRIC CAPITAL RETAIL BANK ("GECRB"), SYNCHRONY BANK ("SYNCHRONY") and DOES 1-10 INCLUSIVE (hereafter collectively referred to as DEFENDANTS), for violation of 11 U.S.C. §362(a)(6) and negligent and willful violation of 47 U.S.C. §227 *et seq*.

# II.
# JURISDICTION

2. This Court has jurisdiction over Plaintiff's claims under 11 U.S.C. §362(a)(6) pursuant to 28 U.S.C. §1334.

3. This Court has jurisdiction over Plaintiff's claim under 47 U.S.C. §227 et. seq. arises pursuant to 28 U.S.C. §1331, federal questions jurisdiction.

4. A substantial part of the events giving rise to Plaintiff's claims occurred within this judicial district.

# III.
# THE TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), 47 U.S.C. §227 GENERALLY

5. In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA") in response to a growing number of consumer complaints regarding unwanted telemarketing calls and unwanted automated and prerecorded telephone calls, which Congress found to be a costly nuisance and an invasion of privacy to consumers.

*BRONTE V. LENSCRAFTERS et. al.*

6.  In furtherance of this goal, the TCPA regulates, among other things, the use of any automated telephone dialing system or an artificial or prerecorded voice. Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of prerecorded messages or autodialers to make any call to a wireless number in the absence of an emergency or without the prior express consent of the called party.

7.  Likewise, section 227(b)(1)(A)(iii) prohibits the use of prerecorded messages in any calls to a residential telephone line in the absence of an emergency, the prior express consent of the called party, or order by the Federal Communications Commission ("FCC").

8.  The FCC, which pursuant to the statute has prescribed various regulations implementing the TCPA requirements, held in a recent FCC Declaratory Ruling that prerecorded message calls to a wireless number by a creditor for (or on behalf of a creditor) are permitted only if the calls are made with "prior **express** consent" of the called party. The FCC held "the creditor should be responsible for demonstrating that the consumer provided prior express consent. The creditors are in the best position to have records kept in the usual course of business showing such consent . . ." *In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C.R. 559, 564 (2007).

9.  Prior express consent is "deemed to be granted only if the wireless number was provided by the consumer to the creditor, and such number was provided during the transaction that resulted in the debt owed." *Id.* at 564-65.

10. Although a person who knowingly provides his or her wireless telephone number to a creditor may have consented to receive telephone calls at the

*BRONTE V. LENSCRAFTERS et. al.*

2

number regarding the debt, such consent may be revoked by further instruction from the consumer. *Id.* at 564. According to the FCC's ruling, any claim that the knowing release of a phone number has given effect to an invitation to be called at the number only exists "absent instructions to the contrary." *Id.* A written cease and desist order advises a creditor to stop calling and serves to revoke any prior consent.

## IV.
## PARTIES

11. At all times alleged herein, Plaintiff was an individual residing in the City of San Diego, County of San Diego, and State of California and from whom Defendants sought to collect a consumer debt from Plaintiff after she had filed for Chapter 7 bankruptcy protection and after the court issued the automatic stay. Further, Plaintiff is a "person" as defined by 47 U.S.C. §153(39).

12. Plaintiff is informed and believes, based and thereon alleges that Defendants are in the business of selling eye glassware on credit and issuing and/or servicing these credit accounts for individuals residing in the County of San Diego, State of California.

13. Defendants and each of them are and at all times mentioned here were a "corporation" and a "person" as defined by 47 U.S.C. §153(15) and (39).

14. All telephone contacts by Defendants to Plaintiff occurred on Plaintiff's cellular and/or residential telephone via an "automated telephone dialing system" and/or used an "artificial or prerecorded voice" as defined by 47 U.S.C. §227(a)(1) and (b)(1)(A).

15. All calls that are the subject of this complaint occurred within four years of filing this complaint.

---

*BRONTE V. LENSCRAFTERS et. al.*

3

16. The true names and capacities, whether individual, corporate, associate or other, of the defendants sued herein as Does 1 through 10, inclusive, are unknown to Plaintiff. When the true names and capacities of such defendants are ascertained, Plaintiff shall amend this complaint to allege the same. Plaintiff is informed and believes, and based thereon alleges, that each such fictitiously named defendant herein is responsible for each of the acts and omissions alleged herein.

17. For purposes of this Complaint, unless otherwise indicated, "Defendants" includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants and each of them herein.

18. The Defendants, and each of them, were acting on their own behalf and as the agents, servants, partners, joint venturers, and employees of each other, and within the scope of their agency, authority and employment.

## V.

## FACTS

### Plaintiff Retained Doan Law Firm

19. On or about **September 3, 2015**, Plaintiff retained DOAN LAW FIRM to dispute the validity of the debt, to end communications on the debt, to eliminate all personal liability on the debt via Title 11 of the United States Code, to ensure that creditors accurately and completely report account information to each credit reporting bureau, as well to expressly revoke consent, if any, given by the Plaintiff to have Defendants communicate directly with Plaintiff.

20. Specifically, DOAN LAW FIRM was retained to provide the following services:

---

*BRONTE V. LENSCRAFTERS et. al.*

4

1) Stop all future communications and harassment from creditors;
2) Dispute the validity of the debt alleged based on 15 U.S.C. §§1692c and 1692d, among other things, the statute of frauds, standing in light of securitization, set off rights, improper fees and interest charges and other state and federal statutes;
3) Ensure that creditors correctly and accurately report to credit reporting agencies information about Plaintiff's account, and fact that the enforceability was disputed;
4) Eliminate personal liability using Title 11 of the U.S. Code;
5) Ensure that creditors comply with Civil Code §1785.25 and the Fair Credit Reporting Act (FCRA);
6) Expressly revoke any prior consent for the purposes of the TCPA; and
7) Stop any and all future communications and harassments by creditors using prerecorded messages and automatic dialing systems as prohibited under the TCPA.

21. Plaintiff paid money to DOAN LAW FIRM for the foregoing services.

22. The purported debt owed to Defendants was the subject of a Chapter 7 Bankruptcy and has since been discharged.

23. Defendants have no further contractual rights to enforce the debt against Plaintiff and Plaintiff has no obligation to pay Defendants.

**Legal Help Was Provided To Protect Plaintiff From Defendants:**

24. DOAN LAW FIRM sent DEFENDANTS a Cease and Desist Orders dated **September 3, 2015** sent via a proof of service dated **September 4, 2015** directing Defendants to cease all communications with Plaintiffs. True and correct copies of the Cease and Desist Orders and the proof of service are attached collectively hereto as **Exhibit "A"** and incorporated herein.

25. The written Orders to Defendants specifically provided the following:
    a) Plaintiff would soon be filing under Title 11 Federal Bankruptcy Protection;
    b) Advised that Plaintiff refused to pay the debt;
    c) Advised that Plaintiff disputed the validity of the debt;
    d) Advised that Plaintiff was now represented by an attorney, DOAN LAW FIRM with respect to the debt;
    e) Ordered that Defendants Cease and Desist all further communications with Plaintiffs with respect to the debt; and
    f) Advised that billing statements should be sent to 1930 S. Coast Hwy., Suite 206, Oceanside, CA 92054, Doan Law Firm's address.

### Defendants Had Actual Knowledge Of Revocation of Consent, If Any, and of the Plaintiff Filing for Chapter 7 Bankruptcy Protection

26. Defendants physically received and had actual knowledge of the Cease and Desist Orders and the Notice of Bankruptcy and Meeting of Creditors.
27. Defendants had actual knowledge of **attorney representation** by the DOAN LAW FIRM.
28. Defendants actually knew they had to **Cease and Desist** all further communications with Plaintiff with respect to the debt.
29. Defendants actually knew Plaintiff **refused to pay** the debt.
30. Defendants actually knew that Plaintiff **disputed the validity** of the debt.
31. Defendants actually knew Plaintiff was preparing to file for **Federal Bankruptcy Relief under Title 11**.
32. Defendants actually **knew they were now prohibited from contacting** Plaintiff by all means.

*BRONTE V. LENSCRAFTERS et. al.*

6

33. Defendants actually knew they could no longer call, write, send billing statements, statements of account, or any other communication, except legal process to Plaintiff.

34. Defendants knew they could only communicate with DOAN LAW FIRM.

35. Defendants knew they could only call, write, send billing statements, and send statements of account, to the DOAN LAW FIRM at the address provided.

36. The Official Staff Commentary on Regulation Z 226.2(a) (22)-2 specifically provides:

> "*An attorney and his or her client are considered to be the same person for purpose of this regulation when the attorney is acting within the scope of the attorney-client relationship with regard to a particular transaction.*"

37. Defendants knew that any further communications of any kind with Plaintiff was prohibited, unlawful, illegal, and would subject them to damages.

38. Plaintiff did in fact file for Chapter 7 Bankruptcy protection on **September 30, 2015**, in the Southern District Bankruptcy Court, Case No. 15-06318. Defendants Lenscrafters and GECRB were served by the Bankruptcy Noticing Center on **October 3, 2015** via First Class U.S. mail. A true and correct copy of the Bankruptcy Notice and Meeting of Creditors is attached hereto as **Exhibit "B"** and incorporated hereat.

**DEFENDANTS Committed in excess of (50) Unlawful Communications**

39. Despite knowledge of attorney representation, Defendants intentionally, willfully, deliberately, and knowingly refused to abide by the laws of TCPA, as set forth in the Cease and Desist Orders and Notice of filing for Bankruptcy and communicated with Plaintiffs in regard to the alleged debt.

40. Defendants never obtained relief of stay. The unlawful communications were done willfully and with knowledge of the bankruptcy and automatic stay. The Defendants continued to collect on this account and harass the Plaintiff.

41. Specifically, Defendants continued communications with Plaintiffs, as further evidenced by some, but not all of the phone call records and logs. True and correct copies of the some, but not all communications are attached hereto collectively as **Exhibit "C"** and incorporated herein.

42. Defendants continued to make phone calls to Plaintiff from on or about **September through October of 2015** despite the fact that they received a written Cease and Desist Orders and Notice of the Plaintiff's bankruptcy filing and the automatic stay.

43. The numerous communications evidence a pattern and practice wherein Defendants engaged in unlawful harassment and abuse to coerce payment.

44. Upon receiving payment, Defendants represented that the harassment and abuse would stop and Defendants would restore to Plaintiff right to privacy and peace of mind.

## DEFENDANTS Willfully And Knowingly Violated
## The Telephone Consumer Protection Act of 1991

45. Plaintiff had a consumer credit account that had originated with, was assigned to, and/or was serviced by Defendants.

46. As a creditor, Defendants and each of them are fully aware of the TCPA and the regulations it provides.

47. Plaintiff denies ever providing their cell phone and/or residential telephone numbers to Defendants with the express consent to be called by an

"automatic telephone dialing system" or "artificial or prerecorded voice," or any other method.

48. Plaintiff further demonstrated she did not consent to any such calls by mailing the written cease and desist orders, as set forth above, instructing Defendants to immediately stop all further communications.

49. Defendants knew each of its harassing communications were willful and knowing violations of 47 U.S.C. §227b (1) (A) (iii) and/or 47 U.S.C. §227b (1) (B).

50. Defendants' harassing communications, as set forth above, are part of an overall business practice whereby Defendants knowingly, willfully, and intentionally use automated and prerecorded machines to place calls to consumers, which Congress has explicitly found to be a costly nuisance and an invasion of privacy to such individuals.

51. Defendants willful and knowing violations of the TCPA undermine Congress' purpose and intent behind the Act. As Defendants are rarely ever sued successfully under the TCPA for such violations, Defendants have the incentive to continue their unlawful practices.

## DEFENDANTS Willfully And Knowingly Violated
## The Bankruptcy Automatic Stay Under 11 U.S.C. §362(a)(6)

52. As a creditor specifically listed in Plaintiff's Bankruptcy Petition, Defendants and each of them are fully aware of the Automatic Stay and order prohibiting any collection efforts.

53. Defendants knew each of its harassing communications were willful and knowing violations of 11 U.S.C. §362(a)(6).

---

*BRONTE V. LENSCRAFTERS et. al.*

54. Defendants willful and knowing violations of 11 U.S.C. §362(a)(6) undermine Congress' purpose and intent of preserving debtor's assets and allowing debtors to reorganize their debts.

**PLAINTIFF Suffered Damages As A Result Of DEFENDANT'S Conduct**

55. As a direct result of Defendants' harassing communications, Plaintiff incurred actual damages consisting of mental and emotional distress, nervousness, grief, embarrassment, loss of sleep, anxiety, worry, mortification, shock, depression, humiliation, indignity, pain and suffering, and other injuries. Plaintiffs, in receiving numerous phone calls, felt hopeless and felt there was no way out every time they received a call, letter, statement or email.

56. Plaintiff experienced severe anxiety and depression which was exacerbated by Defendants ongoing and continuous telephone calls. Plaintiff was in constant fear every time the phone rang. She was humiliated and felt shamed by the phone calls of the Defendants.

57. Plaintiff was also experiencing symptoms of depression and lethargy due to unlawful communications received from Defendants. The calls affected her relationships.

58. Plaintiff incurred out of pocket monetary damages when attorney fees and costs were paid to the DOAN LAW FIRM for services provided to protect Plaintiff under the TCPA and Title 11, which ultimately failed.

59. Plaintiff incurred additional incidental actual damages including, but not limited to, gas and transportation costs traveling to the law firm, telephone call charges, postage, and other damages.

60. Plaintiff continues to incur attorney fees and costs in filing this suit and bringing this matter to trial.

61. Defendants' conduct has caused Plaintiff unwarranted and unnecessary time, effort, and expense in seeking to enforce rights guaranteed under Title 11 and under the TCPA. Plaintiff has incurred mental and emotional distress, nervousness, grief, anxiety, worry, mortification, shock, humiliation and indignity, which will continue to trial.

## VI.

## Three (3) CAUSES OF ACTION

### FIRST CAUSE OF ACTION:
### <u>NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. §227 et seq.</u>

62. Plaintiff realleges and incorporates by reference the above paragraphs as though set forth fully herein.

63. Telephone Consumer Protection Act of 1991, 47 U.S.C. §227(b) (1) (A) (iii) and (B) provides in pertinent part:

> *(1) It shall be unlawful for any person within the United States or any person outside the United States if the recipient is within the United States -*
>
> > *(A) to make any call (other than a call made for emergency purpose or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice -*
> >
> > *. . .*

---

*BRONTE V. LENSCRAFTERS et. al.*

11

> *(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.*
>
> *(B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message . . .*

64. Defendants violated 47 U.S.C. §227 *et seq.* since Defendants called and harassed Plaintiff at least **(50)** times using an "automated telephone dialing system," as that term is defined by 47 U.S.C. §227a(1). A true and correct copy of the "Unlawful Communications Log" is attached hereto as **Exhibit "C"**, and is incorporated herein.

65. During these telephone calls, Defendants used "an artificial or prerecorded voice," as prohibited by 47 U.S.C. §227b (1) (A) and (B).

66. Defendants placed these calls to a telephone number assigned to a residential telephone line and/or cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. §227b(1)(A) and (B).

67. These telephone calls were not placed by Defendants for emergency purposes, within the meaning of 47 U.S.C. §227b (1) (A) and (B).

68. Plaintiff did not provide "express consent" allowing Defendants to place telephone calls to Plaintiff's residential and/or cellular phone placed by an "automatic telephone dialing system" or utilizing an "artificial or prerecorded voice," within the meaning of 47 U.S.C. §227b(1)(A) and (B).

69. In the event Defendants allege they obtained the prior express consent of Plaintiff to receive such automated calls, Plaintiff **expressly and explicitly revoked any such consent** in writing when Plaintiff sent a "Cease and Desist

---

*BRONTE V. LENSCRAFTERS et. al.*

12

Orders" stating to stop such repetitive and harassing calls. A true and correct copy of the Cease and Desist Orders and the corresponding Proof of Service is attached hereto as **Exhibit "A"** and incorporated herein.

70. Under the TCPA and pursuant to the FCC's Declaratory Ruling, the burden is on Defendants to demonstrate Plaintiff provided express consent within the meaning of the statute. Defendants have failed to meet their burden since no written express consent exists. In the alternative, even if Defendants allege such initial consent existed at a prior time; Defendants have failed to meet their burden once the cease and desist letters expressly and explicitly revoked any such consent in writing.

71. Defendants' calls do not fall within any exception by rule or order of the Commission, as provided by 47 U.S.C. §227b (B).

72. The foregoing violations of 47 U.S.C. §227b (1) by Defendants trigger a recovery of **$500 in statutory damages** for **each and every call** in violation of the statute, pursuant to 47 U.S.C. §227b (3).

## SECOND CAUSE OF ACTION:
## KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. §227 et seq.

73. Plaintiff realleges and incorporates by reference the above paragraphs as though set forth fully herein.

74. Telephone Consumer Protection Act of 1991, 47 U.S.C. §227(b) (1) (A) (iii) provides in pertinent part:

> *(1) It shall be unlawful for any person within the United States or any person outside the United States if the recipient is within the United States -*

---

*BRONTE V. LENSCRAFTERS et. al.*

13

> *(A) to make any call (other than a call made for emergency purpose or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice -*
>
> *. . .*
>
> *(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.*

75. Defendants violated 47 U.S.C. §227b(1)(A) since Defendants knowingly and willingly called and harassed Plaintiff at least **(50)** times using an "automated telephone dialing system," as that term is defined by 47 U.S.C. §227a(1). A true and correct copy of the "Unlawful Communications Log" which reflect some, but not all of the calls is attached hereto as **Exhibit "C"**, and is incorporated herein.

76. During these telephone calls, Defendants knowingly and willingly used "an artificial or prerecorded voice," as prohibited by 47 U.S.C. §227b (1) (A).

77. Defendants knowingly and willingly placed these calls to a residential telephone line and/or cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. §227b(1)(A) and (B).

78. These telephone calls were not placed by Defendant for emergency purposes as defined by 47 U.S.C. §227b (1) (A) (I).

79. Plaintiff did not provide "express consent" allowing Defendants to place telephone calls to Plaintiff's residential and/or cellular phone placed by an "automatic telephone dialing system" or utilizing an "artificial or prerecorded voice," within the meaning of 47 U.S.C. §227b(1)(A) and (B).

---

*BRONTE V. LENSCRAFTERS et. al.*

80. In the event Defendants allege they obtained the prior express consent of Plaintiff to receive such automated calls, Plaintiff **expressly and explicitly revoked any such consent** in writing when Plaintiff sent a "Cease and Desist Orders" stating to stop such repetitive and harassing calls. True and correct copies of the Cease and Desist Orders and the corresponding Proof of Service is attached hereto as **Exhibit "A"** and incorporated herein.

81. Under the TCPA and pursuant to the FCC's Declaratory Ruling, the burden is on Defendants to demonstrate Plaintiff provided express consent within the meaning of the statute. Defendants have failed to meet their burden since no written express consent exists. In the alternative, even if Defendants allege such initial consent existed at a prior time; Defendants have failed to meet their burden once the cease and desist letters expressly and explicitly revoked any such consent in writing.

82. Defendants' calls do not fall within any exception by rule or order of the Commission, as provided by 47 U.S.C. §227b (B).

83. The foregoing violations of 47 U.S.C. §227b(1) by Defendants were knowing and/or willful, which entitle Plaintiff to **treble damages of up to $1,500** for **each and every call** in violation of the statute, pursuant to 47 U.S.C. §227b(3).

### THIRD CAUSE OF ACTION:
### WILLFUL VIOLATIONS OF THE BANKRUPTCY AUTOMATIC STAY, 11 U.S.C. §362(a)(6)

84. Plaintiff realleges and incorporates by reference the above paragraphs as though set forth fully herein.

85. When a debtor files a bankruptcy petition, 11 U.S.C. § 362(a) imposes an automatic stay on proceedings against the debtor. *"[t]he automatic stay is self-*

executing" and "sweeps broadly, enjoining the commencement or continuation of any judicial, administrative, or other proceedings against the debtor . . . ." *Gruntz v. County of Loas Angeles*, 202 F.3d 1074, 1081-82 (9th Cir. 2000) (en banc).

86. The stay *"gives the bankruptcy court an opportunity to harmonize the interests of both debtor and creditors while preserving the debtor's assets for repayment and reorganization of his or her obligations." MacDonald v. MacDonald (In re MacDonald)*, 755 F.2d 715, 717 (9th Cir. 1985) (citation omitted).

87. Further, *"[b]y halting all collection efforts, the stay affords the debtor time to propose a reorganization plan, or simply 'to be relieved of the financial pressures that drove him into bankruptcy.'" Gruntz*, 202 F.3d at 1081 (quoting S. Rep. No. 95-989, at 54-55 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5840-41).

88. Despite receiving multiple notices of the bankruptcy, Defendants continued to collect on the account. By ignoring the bankruptcy and automatic stay, Defendants knowingly violated the automatic stay provisions of 11 USC §362 protecting Petitioner. 11 USC §362 provides in pertinent part:
*a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—*

> *(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;*

---

***BRONTE V. LENSCRAFTERS et. al.***

16

89. Accordingly, Defendants knowingly and intentionally violated the automatic stay on multiple levels and are subject to damages as a result thereof.

90. Actual Damages are defined under 11 USC §362k, which provides in pertinent part:

   (i)   *Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section* **shall** *recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.*

91. The word "shall" means that if the court finds a willful violation of the automatic stay, an award of actual damages to an individual debtor, including attorney's fees, is mandatory. *In re Youssef,* 2011 WL 3298903, at *4 (B.A.P. 9th Cir. Feb. 1, 2011).

*"[T]he willfulness test for automatic stay violations merely requires that: (1) the creditor knows of the automatic stay; and (2) the actions that violate the stay be intentional."* Morris v. Peralta, 317 B.R. 381, 389 (9th Cir.BAP 2004) (citing *Eskanos v. Adler, P.C. v. Leetien (In re Leetien),* 309 F.3d 1210, 1215 (9th Cir.2002).

As a result of Defendants' intentional violation of the automatic stay, Plaintiff suffered actual damages which include, but are not limited to:

   i.   Plaintiff has experienced stress, anxiety, feelings of helplessness and hopelessness, sleeplessness, inability to focus, poor concentration, irritability, nausea, emotional distress, aggravation, depression and anger as a direct result of Defendants' unlawful conduct;

   ii.  Plaintiff has experienced embarrassment, stress and tension between herself and others who she has a close relationship;

*BRONTE V. LENSCRAFTERS et. al.*

17

iii.   Plaintiff has incurred attorney fees and costs in Defendants to comply with the automatic stay;

vi.   Plaintiff continues to incur attorney fees and costs in bringing this action

## VII.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff having set forth the claims for relief against Defendants, respectfully prays this Court grant relief for statutory, general, special, consequential, and incidental damages according to proof, in excess of **$25,000.00**.

Such relief is reasonably justified under the circumstances, and is more specifically broken down as follows:

A.   **Actual Economic Damages** totaling in excess of **$5,000.00**, consisting of **attorney fees** previously paid to DOAN LAW FIRM, LLP to end the harassment, and in transportation, gasoline, telephone call charges, and postage, pursuant to California Civil Code §1788.30(a); $

B.   **Emotional Distress Damages** of **at least $10,000.00** for mental and emotional distress, anxiety, fear, embarrassment and other injuries;

C.   **Statutory Penalties of at least $1,500.00** as against Defendants arising for **each and every** violation of 47 U.S.C. §227(b) (1) pursuant to 47 U.S.C. §227(b) (3) (B);

H.   **Alternatively**, if the Court finds Plaintiff is not entitled to statutory penalties of $1,500.00 for each violation of 47 U.S.C. §227(b) (1), Plaintiff requests **Statutory Penalties of up to $500.00** as against Defendants arising for **each and every** violation of 47 U.S.C. §227(b) (1) pursuant to 47 U.S.C. §227(b) (3) (C), and as further proof may reveal;

I.   **Costs of Litigation** and reasonable **Attorney's Fees** against Defendants;

*BRONTE V. LENSCRAFTERS et. al.*

J. **Injunctive Relief** against Defendants, restraining them from any further contact with Plaintiff and from reporting incomplete and inaccurate information to credit reporting agencies and

L. Such **other and further relief** as the Court may deem just and proper.

Dated: November 2, 2016

Respectfully submitted,

**DOAN LAW FIRM, LLP**

By: /s/ Karen S. Spicker
Karen S. Spicker
Attorney for Plaintiff

---

*BRONTE V. LENSCRAFTERS et. al.*